**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Northern Indiana Public Service Company LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>Union Pacific Railroad Company, BNSF Railway Company, CSX Transportation, Inc., and Norfolk Southern Railway Company,<br><br>    Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) )  CIVIL ACTION NO. 1:19-cv-02927-PLF |

**UNION PACIFIC RAILROAD COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT**

Defendant Union Pacific Railroad Company ("UP"), for itself only, answers the Complaint ("Complaint") of Northern Indiana Public Service Company LLC ("Plaintiff"), as set forth below. UP denies each and every allegation of the Complaint, except as specifically stated, and denies that it violated in any way the antitrust laws under which Plaintiff purports to bring this action.

**RESPONSE TO PLAINTIFF'S ALLEGATIONS**

UP responds to the allegations of the Complaint's separately numbered paragraphs, as follows:

**NATURE OF THE ACTION**

1. UP admits that both before and after 2003 it collected fuel surcharges from certain customers as a cost-recovery mechanism. UP lacks sufficient information to form a belief about

the truth of the allegations in this paragraph concerning Plaintiff's business, and on that basis denies them. UP denies the remaining allegations in this paragraph.

2. UP admits that the Staggers Rail Act ("Staggers Act") of 1980 partially deregulated the railroad industry. UP admits that, prior to the Staggers Act, railroads generally charged rates established in published tariffs filed with the Interstate Commerce Commission ("ICC"). UP denies the remaining allegations in this paragraph.

3. UP denies the allegations in this paragraph.

4. UP admits that there are now seven Class I railroads in the United States as Plaintiff defines the term. UP lacks sufficient information to form a belief about the truth of the allegations in this paragraph concerning other Defendants' percentage of track operation and revenues, and on that basis denies them. UP denies the remaining allegations in this paragraph.

5. UP denies the allegations in this paragraph.

6. UP admits that James Young stated in an interview in 2007 that UP is now "putting in place fuel surcharge mechanisms[,] . . . which is really unique to the railroad industry[,]" and that "[t]hree or four years ago they were really nonexistent." In response to a separate question concerning capital investment, Mr. Young stated that UP is committed to a high level of capital spending as long as UP's financial returns continue to improve. He added that it has only been in the last couple of years that the financial returns in the rail business have started to move in the right direction. UP denies the remaining allegations of this paragraph.

7. UP denies the allegations in this paragraph.

8. UP admits that certain Defendants attended certain meetings of the Association of American Railroads and the National Freight Transportation Association. UP denies the remaining allegations in this paragraph.

9. UP admits that in late 2002 it announced a carload fuel surcharge based upon the WTI index, and that in 2003 it announced a carload fuel surcharge based upon the HDF Index. UP admits that BNSF had fuel surcharges that were based on the HDF Index. UP denies the remaining allegations in this paragraph.

10. UP lacks sufficient information to form a belief about the truth of the allegations in this paragraph concerning other Defendants' alleged statements, conduct, or documents, and on that basis denies them. UP denies the remaining allegations in this paragraph.

11. UP admits that NS announced a change to the calculation of its WTI Index based fuel surcharges beginning in March 2004. UP otherwise lacks sufficient information to form a belief about the truth of the allegations in this paragraph concerning NS's alleged statements, conduct, or documents, and on that basis denies them. UP denies the remaining allegations in this paragraph.

12. UP denies the allegations in this paragraph.

13. UP denies the allegations in this paragraph.

14. UP admits that the All Inclusive Index ("AII") and the Rail Cost Adjustment Factor ("RCAF") were indices published by the Association of American Railroads ("AAR"), a railroad trade association, that weighted a variety of cost factors. UP admits that it entered into private freight transportation contracts, some of which included rate escalation provisions tied to various cost indices. UP denies that the RCAF or the AII captured its actual increases in fuel costs. UP denies the remaining allegations in this paragraph.

15. UP lacks sufficient information to form a belief about the truth of the allegations in this paragraph concerning alleged statements by BNSF's Chairman, President, and CEO, and on that basis denies them. UP denies the remaining allegations in this paragraph.

16.     UP denies the allegations in this paragraph.

17.     UP denies the allegations in this paragraph.

18.     UP admits that the Surface Transportation Board ("STB") issued a ruling in January 2007 directed to rate-based rail fuel surcharges related to regulated traffic. UP asserts that the ruling speaks for itself and on that basis denies Plaintiff's characterization of the ruling, which is inappropriate for a complaint and should be stricken.

19.     UP admits that the American Chemistry Council and an entity calling itself Consumers United for Rail Equity issued a purported study of railroad fuel surcharge revenue in 2007. UP denies that that study accurately analyzed or reported its fuel surcharge revenue or fuel costs. UP denies the remaining allegations in this paragraph.

20.     UP denies the allegations in this paragraph.

## PARTIES

21.     UP lacks sufficient information to form a belief about the truth of the allegations concerning NIPSCO's corporate history, corporate status, ownership, and business. UP denies the remaining allegations in this paragraph.

22.     UP denies that it is a Utah corporation. UP admits the remaining allegations in this paragraph.

23.     UP admits the allegations in this paragraph.

24.     UP admits the allegations in this paragraph concerning BNSF's corporate status and place of business. UP lacks sufficient information to form a belief about the truth of the allegations in this paragraph regarding BNSF's business operations, and on that basis denies them.

25.     UP admits the allegations in this paragraph.

## JURISDICTION AND VENUE

26.  UP admits that the Complaint purports to plead federal antitrust claims against Defendants under Section 4 of the Clayton Act, 15 U.S.C. §15, and Section 1 of the Sherman Act, 15 U.S.C. §1.  UP denies it has violated the antitrust laws, or that the Complaint states a claim under those statutes.  The statement regarding jurisdiction is a legal conclusion for which no response is necessary.  To the extent a response is deemed required, UP denies the allegations in this paragraph.

27.  This paragraph states a legal conclusion for which no response is necessary.  To the extent a response is deemed required, UP denies the allegations in this paragraph.

28.  UP does not contest personal jurisdiction in this case.  UP denies all remaining allegations in this paragraph.

## INTERSTATE TRADE AND COMMERCE

29.  UP admits that it sells rail transportation services that affect interstate commerce. UP denies that it has engaged in a conspiracy. UP denies the remaining allegations in this paragraph.

## THE [ALLEGED] ILLEGAL CONSPIRACY
## [ALLEGED] PRE-CONSPIRACY PERIOD: DEREGULATION AND CONSOLIDATION

30.  UP denies the unnumbered headings that appear before this paragraph.  UP admits that the Staggers Act of 1980 partially deregulated the railroad industry.  UP admits that, prior to the Staggers Act, railroads generally charged rates established in published tariffs filed with the ICC.  UP denies the remaining allegations in this paragraph.

31.  UP lacks sufficient information to form a belief about the truth of the allegation

that at least 70 percent of all rail shipments were subject to private contracts, or are otherwise not rate-regulated, and on that basis denies it.  UP denies the remaining allegations in this paragraph.

32.     UP admits that there are now seven Class I railroads in the United States as Plaintiff defines the term, and that two of those railroads are owned by Canadian entities. UP denies the remaining allegations in this paragraph.

33.     UP lacks sufficient information to form a belief about the truth of the allegations in this paragraph concerning other Defendants' percentage of track operation and revenues and on that basis denies them. UP denies the remaining allegations in this paragraph.

34.     UP denies the allegations in this paragraph.

**DEFENDANTS [ALLEGEDLY] AGREE TO INTRODUCE FUEL SURCHARGES AND FIX SHIPPING PRICES**

35.     UP denies the unnumbered heading that appears before this paragraph.  UP admits that a document produced in *In re: Rail Freight Fuel Surcharge Antitrust Litigation*, Case No. 07-489 (D.D.C.) ("the Putative Class Action") contained the language quoted in this paragraph. UP denies Plaintiff's characterizations of that document.  UP denies the remaining allegations in this paragraph.

36.     UP asserts that the decisions and regulations of the STB speak for themselves and denies the remaining allegations in this paragraph.

37.     UP denies the allegations in this paragraph.

38.     UP admits that it entered into private rail freight transportation contracts after passage of the Staggers Act and that some of those contracts included rate escalation provisions tied to various cost indices. UP admits that the AII and the RCAF were indices published by the AAR that weighted a variety of cost factors.  UP denies that the RCAF or the AII captured its actual increases in fuel costs.  UP denies the remaining allegations in this paragraph.

39. UP admits that certain rail freight transportation contracts included fuel surcharges prior to 2003. UP denies the allegations in this paragraph.

40. UP denies the allegations in this paragraph.

41. UP admits that the National Freight Transportation Association ("NFTA") held a meeting in Litchfield Park, Arizona. UP admits that certain railroad executives attended certain AAR board meetings at which appropriate topics concerning the rail industry were discussed. UP denies the remaining allegation in this paragraph.

42. UP admits that one of UP's carload fuel surcharges applied a surcharge of 0.5 percent for every five cent increase above $1.35 per gallon in the HDF Index, and that this formula resulted in the same percentage surcharge as one of BNSF's published surcharges above a price of $1.35 per gallon in the HDF Index. UP denies the remaining allegations in this paragraph.

43. UP denies the allegations in this paragraph.

44. UP denies the allegations in this paragraph.

45. UP denies the allegations in this paragraph.

46. UP denies the allegations in this paragraph.

47. UP denies the allegations in this paragraph.

48. UP denies the allegations in this paragraph.

49. UP denies the allegations in this paragraph.

50. UP denies the allegations in this paragraph.

51. UP admits that a document filed in the Putative Class Action contains the language quoted in this paragraph. UP denies Plaintiff's characterizations of that document. UP denies the remaining allegations in this paragraph.

52. UP admits that the AII and RCAF included a fuel cost component.  UP denies that the RCAF or the AII captured its actual increases in fuel costs.  UP denies the remaining allegations in this paragraph.

53. UP denies the allegations in this paragraph.

54. UP denies the allegations in this paragraph.

**DEFENDANTS [ALLEGEDLY] COLLECTIVELY
CHANGE AII TO REMOVE FUEL**

55. UP denies the unnumbered heading that appears before this paragraph.  UP denies the allegations in this paragraph.

56. UP denies the allegations in this paragraph.

57. UP asserts that the AAR's description of itself speaks for itself.  UP lacks sufficient information to form a belief about the truth of the allegations regarding CSX's description of the AAR.  UP admits that Defendants' CEOs are members of the board of the AAR, which meets in Washington, D.C.  UP denies the remaining allegations in this paragraph.

58. UP admits that the AAR announced the AII-LF in the fall of 2003.  UP asserts that the AAR's publication speaks for itself.  UP denies that the AAR's announcement of the AII-LF was pursuant to, or the result of, a conspiracy, or that the decision was unlawful collective action.  UP denies the remaining allegations in this paragraph.

59. UP denies the allegations in this paragraph.

60. UP denies the allegations in this paragraph.

61. UP lacks sufficient information to form a belief about the truth of the allegations in this paragraph concerning other Defendants' alleged statements, conduct, or documents, and on that basis denies them.  UP denies the remaining allegations in this paragraph.

62. UP admits that James R. Young made the statements quoted in this paragraph

during an October 2004 earnings conference call, at which time he was President and COO of UP.  During that same earnings call, Mr. Young explained that UP uses fuel surcharges "to neutralize the volatility of fuel prices."  UP denies the remaining allegations in this paragraph.

**DEFENDANTS [ALLEGEDLY] IMPLEMENT FUEL SURCHARGE SCHEME**

63.	UP denies the unnumbered heading preceding this paragraph.  UP denies the allegations in this paragraph.

64.	UP admits that documents produced in the Putative Class Action contained the language quoted in paragraph 64.  UP denies Plaintiff's characterization of that document.  UP denies the remaining allegations in this paragraph.

65.	UP denies the allegations in this paragraph.

66.	UP denies the allegations in this paragraph.

67.	UP lacks sufficient information to form a belief about the truth of the allegations concerning other Defendants' costs and revenues, and on that basis denies them.  UP denies the remaining allegations in this paragraph.

68.	UP asserts that the quoted AAR publication speaks for itself and denies Plaintiff's characterization of that publication.  UP lacks sufficient information to form a belief about the truth of the allegations concerning other Defendants' fuel efficiency, and on that basis denies them.  UP denies the remaining allegations in this paragraph.

69.	UP denies the allegations in this paragraph.

70.	UP denies the allegations in this paragraph.

71.	UP asserts that the cited article in *Traffic World* speaks for itself.  UP admits that American Chemistry Council and an entity calling itself Consumers United for Rail Equity issued a purported study of railroad fuel surcharge revenue in 2007.  UP denies that that study

accurately analyzed or reported its fuel surcharge revenue or fuel costs.  UP admits that the "Study of Rural Transportation Issues" report included the language quoted in this paragraph.  UP denies that that report accurately analyzed or reported its fuel surcharge revenue or fuel costs.  UP denies the remaining allegations in this paragraph.

72. UP denies the allegations in this paragraph.

73. UP admits that James Young stated in an interview in 2007 that UP is now "putting in place fuel surcharge mechanisms[,] . . . which is really unique to the railroad industry[,]" and that "[t]hree or four years ago they were really nonexistent."  In response to a separate question concerning capital investment, Mr. Young stated that UP is committed to a high level of capital spending as long as UP's financial returns continue to improve.  He added that it has only been in the last couple of years that the financial returns in the rail business have started to move in the right direction.  UP denies the remaining allegations of this paragraph.

74. UP denies the allegations in this paragraph.

75. UP denies the allegations in this paragraph.

### STB FINDS RAIL FUEL SURCHARGES UNREASONABLE

76. UP denies the unnumbered heading preceding this paragraph.  UP admits that the STB issued a ruling in January 2007 directed to rate-based rail fuel surcharges related to regulated traffic.  UP asserts that the ruling speaks for itself and on that basis denies Plaintiff's characterization of the ruling, which is inappropriate for a complaint and should be stricken.

77. UP admits that the STB issued a ruling in January 2007 directed to rate-based rail fuel surcharges related to regulated traffic.  UP asserts that the ruling speaks for itself and on that basis denies Plaintiff's characterization of the ruling, which is inappropriate for a complaint and should be stricken.

78. UP denies the allegations in this paragraph.

### DEFENDANTS' [ALLEGED] SUPRACOMPETITIVE PROFITS

79. UP denies the unnumbered heading preceding this paragraph.  UP lacks sufficient information to form a belief about the truth of the allegations relating to operating revenue of the United States railroad industry and the FSC percentages charged by other Defendants, and on that basis denies them.  UP admits that James Young made the statement quoted in this paragraph.  UP denies Plaintiff's characterization of that statement.  UP denies the remaining allegations in this paragraph.

80. UP denies the allegations of this paragraph, including all of its sub-parts.

### [ALLEGED] ANTITRUST INJURY – [ALLEGED] IMPACT ON PLAINTIFF

81. UP denies the unnumbered heading preceding this paragraph.  UP lacks sufficient information to form a belief about the truth of the allegations in this paragraph relating to Plaintiff's business, and on that basis denies them.  UP denies the remaining allegations in this paragraph.

82. UP asserts that the cited article speaks for itself.  UP denies the remaining allegations in this paragraph.

83. UP lacks sufficient information to form a belief about the truth of the allegations in this paragraph relating to Plaintiff's business, and on that basis denies them.  UP denies the remaining allegations in this paragraph.

84. UP denies the allegations in this paragraph.

85. UP admits that it entered into certain private freight transportation contracts with NIPSCO in or after 2003.  UP denies the remaining allegations in this paragraph.

### COUNT I – [ALLEGED] ILLEGAL CONSPIRACY IN RESTRAINT OF TRADE

86. UP denies the unnumbered heading in the preceding paragraph. UP incorporates by reference its responses to the preceding numbered paragraphs.

87. UP denies the allegations in this paragraph.

88. UP denies the allegations in this paragraph.

89. UP denies the allegations in this paragraph.

90. UP denies the allegations in this paragraph, including all of its subparts.

91. UP denies the allegations in this paragraph.

## PLAINTIFF'S PRAYER FOR RELIEF

UP denies that Plaintiff is entitled to any of the relief they seek.

## PLAINTIFF'S DEMAND FOR JURY TRIAL

Defendant Union Pacific Railroad Company hereby demands trial by jury on all issues so triable.

## UNION PACIFIC RAILROAD COMPANY'S AFFIRMATIVE DEFENSES

UP asserts the following defenses without in any way alleging it has the burden of proof with respect to any of the defenses or that the Plaintiff is relieved of its burden to prove each and every element of its claims and damages, if any, to which Plaintiff claims it is entitled. The defenses apply to each and every cause of action alleged.

## FIRST AFFIRMATIVE DEFENSE
### (Statute of Limitations)

92. Plaintiff's claims are barred in whole or in part by the applicable statute of limitations, including 15 U.S.C. §15b.

## SECOND AFFIRMATIVE DEFENSE
### (Estoppel, Waiver)

93. Plaintiff's claims are barred, in whole or in part, by the doctrines of estoppel and

waiver.

### THIRD AFFIRMATIVE DEFENSE
### (10706 Statutory Protections)

94. Defendants' alleged conduct with respect to communications concerning interline railroad services and other railroad services was privileged under law, including, but not limited to, the statutory privileges described in 49 U.S.C. §10706.

### FOURTH AFFIRMATIVE DEFENSE
### (Failure to Mitigate Damages)

95. Plaintiff is barred from recovery by reason of its failure to mitigate, minimize or avoid the damages alleged in the Complaint.

### FIFTH AFFIRMATIVE DEFENSE
### (Laches)

96. Plaintiff's claims are barred by the doctrine of laches.

### SIXTH AFFIRMATIVE DEFENSE
### (Exclusive Jurisdiction)

97. Plaintiff's claims are barred under federal laws granting exclusive jurisdiction to the Surface Transportation Board ("STB"), including 49 U.S.C. §10501, et seq., to the extent those claims are based on conduct that is subject to the jurisdiction of the STB.

### SEVENTH AFFIRMATIVE DEFENSE
### (Set-Off)

98. Any alleged claim for damages by Plaintiff is subject to set-off against any money that Plaintiff owes to UP for rail services provided by UP.

### EIGHTH AFFIRMATIVE DEFENSE
### (Standing)

99. Plaintiff lacks standing to assert the antitrust claims that they allege.

### NINTH AFFIRMATIVE DEFENSE
### (Pass-On)

100.  Plaintiff's claims are barred in whole or in part by the pass-on defense.

## TENTH AFFIRMATIVE DEFENSE
### (Implied Preemption)

101.  Plaintiff's claims are preempted by virtue of the federal regulatory scheme governing the provision of rail freight services, including under the filed rate doctrine.

## ELEVENTH AFFIRMATIVE DEFENSE
### (Unclean Hands)

102.  Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

## TWELFTH AFFIRMATIVE DEFENSE
### (Failure to State a Claim for Relief)

103.  Plaintiff fails to state facts or claims against UP sufficient to state a claim upon which relief may be granted.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (Arbitration)

104.  Plaintiff's claims against UP are barred, in whole or in part, to the extent that Plaintiff agreed to arbitrate claims related to its relevant contracts with UP.

## FOURTEENTH AFFIRMATIVE DEFENSE
### (49 U.S.C. § 11101)

105.  Plaintiff's claims are barred, in whole or in part, because those claims improperly infer the existence of a conspiracy based on UP's common carrier obligation to disclose rates and provide shippers with advance notice of rate changes pursuant to 49 U.S.C. § 11101.

## FIFTEENTH AFFIRMATIVE DEFENSE

106.  UP incorporates any other affirmative defenses pleaded by other Defendants that do not conflict with UP's affirmative defenses.

## PRAYER FOR RELIEF

WHEREFORE, UP prays for judgment as follows:

1. That judgment be entered in favor of UP and against Plaintiff on all its claims;

2. That Plaintiff take nothing by its Complaint;

3. That the Complaint be dismissed with prejudice;

4. That UP recover all attorneys' fees, costs, and expenses incurred in defense of this action; and,

5. That the Court grant UP such further relief as the Court deems just and proper.

Dated: December 16, 2019                                           Respectfully submitted,

*/s/ John M. Majoras*
John M. Majoras (DC Bar No. 474267)
Kristen A. Lejnieks (DC Bar No. 502136)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001.2113
Telephone:  +1.202.879.3939
Facsimile:  +1.202.626.1700
E-mail:   jmmajoras@jonesday.com
E-mail:   kalejnieks@jonesday.com

Tyrone R. Childress (CA Bar No. 136795, *pro hac vice* forthcoming)
Erna Mamikonyan (CA Bar No. 302000, *pro hac vice* forthcoming)
Kelsey S. Bryan (DC Bar No. 1034352)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA  90071-2300
Telephone: (213) 489-3939
Facsimile:  (213) 243-2589
E-mail:   tchildress@jonesday.com
E-mail:   emamikonyan@jonesday.com
E-mail:   kbryan@jonesday.com

Attorneys for Defendant
UNION PACIFIC RAILROAD COMPANY